**FILED**

**Dec. 15, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

SHASTA MEAD MOREY,        )
        )
        Plaintiff/Counter-Defendant/   )
        Appellee,        )
        )    Davidson Fourth Circuit
        )    No. 93D-4168
VS.        )
        )    Appeal No.
        )    01-A-01-9506-CV-00243
LESLIE CHARLES MOREY,        )
        )
        Defendant/Counter-Plaintiff/   )
        Appellant.        )


IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE FOURTH CIRCUIT COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


HONORABLE MURIEL ROBINSON, JUDGE


Carol L. McCoy
DAVIES, CANTRELL, HUMPHREYS & McCOY
150 Second Avenue, North, Suite 225
Nashville, Tennessee 37201
ATTORNEY FOR PLAINTIFF/APPELLEE


THOMAS K. BOWERS
P.O. Box 140256
2821 Lebanon Road, Suite 204
Nashville, Tennessee 37214
ATTORNEY FOR DEFENDANT/APPELLANT


AFFIRMED IN PART,
VACATED IN PART AND
REMANDED.

                HENRY F. TODD
                PRESIDING JUDGE, MIDDLE SECTION


CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

| SHASTA MEAD MOREY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff/Counter-Defendant/ | ) | |
| Appellee, | ) | |
| | ) | Davidson Fourth Circuit |
| | ) | No. 93D-4168 |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01-A-01-9506-CV-00243 |
| LESLIE CHARLES MOREY, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff/ | ) | |
| Appellant. | ) | |

O P I N I O N

The defendant, Leslie Charles Morey, has appealed from the judgment of the Trial Court awarding to the plaintiff, Shasta Mead Morey, an absolute divorce, custody of a minor child, child support, a share of marital property, and $3,000.00 attorneys' fees.

The sole issue on appeal is:

> Whether post divorce income received by the appellant from a work for hire employment contract in which appellant transferred ALL copyright and ownership interest therein to the employer can be properly classified as martial property and ordered by the trial court to be split equally between the appellant and the appellee.

The judgment contains the following provision:

> 11. All royalties generated from the Publication Agreement with PAR (Psychological Assessment Resources) are declared marital property and all royalties from and after January 1, 1995 shall be equally divided between the parties for as long as said royalties are paid, each party to be responsible for the taxes due on their one-half share. The division shall begin in 1995 immediately upon the next payment coming in. Each party shall be and is hereby restrained and enjoined from interfering with the payment of these royalties or attempting to divert payment of these royalties to avoid this obligation or attempting to stop the royalties in any fashion. If payment of the royalties are stopped or any interference occurs and the Court determines that there has been any such interference or cancellation in order to defeat this order by Leslie Morey, he shall have to pay the same amount to the wife that she should have received. Nothing in this Restraining Order prevents Leslie Morey from entering into additional contracts that do not defeat the purpose of the existing Publication Agreement.

Both parties are degreed psychologists. In addition to his other professional activities, defendant writes articles on psychology for publication. On May 1, 1989, defendant executed an agreement with Psychological Assessment Resources, Inc., a publisher of psychological literature.

The six-page, single spaced typed document contains the following relevant provisions:

> The Publisher desires the Author to create and produce in consultation with and for and on behalf of the Publisher, and the Author is willing to create and produce for and on behalf of the Publisher, the assessment materials now referred to as the NNS Project--an Adult Psychopathology Test consisting of up to 25 scales and validity indicators and 320-340 items (the test and accessories as currently proposed and as in the future revised, including the items, scales, scoring keys, profiles, standard-score conversion tables, reference-sampling norming tables, item weights and related materials for administration, scoring, reporting, and analysis of the test are collectively referred to as the "Work") on a work for hire basis as set forth herein. The Publisher desires to acquire from the Author, and the Author hereby assigns and transfers to the Publisher, the Author's entire title, right and interest in and to the Work and the copyright therein; and Author hereby agrees to create and produce the Work for and on behalf of the Publisher on a work for hire basis in accordance with the provisions set forth in this agreement.
>
> . . . .
>
> (5) Author will, with all reasonable diligence, perform the usual duties of authors in the production of all editions of said Work.
>
> (6) Author will cooperate in preparing research reports and other articles for publication or presentation to those professional groups which contain potential users of the Work.
>
> (7) Author will promptly respond to all appropriate correspondence directed to him concerning the Work.
>
> (8) Author will consult with the Publisher and use his best efforts to work together toward promoting sales of the Work.
>
> . . . .
>
> (13) If, in the opinion of the Publisher in consultation with the Author, the Work needs revision during the term of this Agreement, the Author agrees to revise the Work and supply the new matter required. Author hereby assigns to Publisher all

right, title and interest in and to the new matter and revisions, and any derivative work and the copyright therein, and such materials, when created, shall also be deemed part of the Work. If, for any reason, the Author does not revise the Work within a reasonable amount of time, as reasonably determined by the Publisher, the Publisher may cause such revision to be made, and may deduct the expense thereof from the first royalties accruing from the sales of such revised edition.

. . . .

(17) Publisher will pay the Author royalties according to the following schedule: twelve percent (12%) on the first $200,000 of Net Sales Receipts (Gross Sales Receipts less returns) during any fiscal year; and fifteen percent (15%) on Net Sales Receipts in excess of $200,000 in any fiscal year. Royalties will be paid quarterly within 60 days following the end of each calendar quarter. Sales through domestic and foreign distributors in any year will earn 10% of the Net Sales Receipts of the Work.

. . . .

Both Author and Publisher mutually agree as follows:

(22) This agreement shall be valid and shall continue in full force and effect from the effective date for the duration of the copyright and any renewals thereof.

(23) All subsidiary rights to the Work, including reprint and translation rights, are granted to the Publisher and all royalty fees from any such rights will be divided 70% to the Publisher and 30% to the Author.

Attached to the agreement was a document entitled "Draft and Timetable for NNS Project Draft of April 19, 1989," which concluded: "Total time - 38 months."

The book contemplated by the agreement was completed and published in 1991. Royalties were paid to defendant in 1991, 1992, 1993 and 1994. No evidence is cited or found as to any revision performed or anticipated. Defendant's argument is based upon the phrase, "on a work for hire basis" as used in the quoted agreement.

In *Community for Creative Non-Violence v. Reid,* 109 S.Ct. 1989, 490 U.S. 730, 104 L.Ed.2d 811 (1989), an association sued a sculptor of a statue to establish copyright

ownership of the statue. The Supreme Court held that the sculptor was not an "employee" of the association, but was an independent contractor and therefore owned the copyright.

Defendant seeks to use this holding to support his insistence that, since his work was designated by the contract as "work for hire," the future rewards of that work are not communal property subject to division by a divorce decree.

Defendant cites 17 U.S.C. §101, which is the "definition" section of the federal copyright law, and which defines "work for hire," but nothing is cited or found in the copyright law which would prevent a divorce court from dividing rights to future compensation for work performed during coverture.

Defendant cites *Murray v. Gelderman,* (5th Cir. 1978), 566 F.2d 1307, which was a suit for copyright infringement and did not relate to inclusion of future royalties in marital estates.

Defendant cites T.C.A. §36-4-121(b)(1)(A) which defines marital property as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage." The following subsection (B) of said statute states:

> "Marital Property" includes income from and any increase in value during marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefits accrued during the period of the marriage. (Emphasis supplied.)

Pension benefits earned by a spouse during the marriage are marital property even though the other spouse did not contribute directly to their preservation or creation. *Batson v. Batson,* Tenn. App. 1988, 769 S.W.2d 849.

-5-

Unquestionably, quasi-pension rights, such as deferred compensation and tax-deferred savings accrued during coverture are marital property. Indeed, a bank account or investments acquired with earnings during coverture would be martial property.

In the present case, the ownership of the copyright to the book produced by defendant is immaterial. The material fact is that, by his labors during the marriage, defendant acquired a contract right to a percentage of the profits on all future sales of the book. This right was vested during the marriage, and is therefore just as much a part of the marital estate as a salary collected and accumulated in a bank account or other investment during marriage. The only difference is that the amount depends upon the volume of sales of the book.

The contract, quoted above, does provide for certain continuing duties of defendant aimed at maintaining the acceptance and currency of the text of the book. Any part of future royalty payments attributable to such future efforts of defendant should not be included in the marital estate; but that part of the future royalties attributable to his efforts during the marriage are included in the marital estate and divided as such.

Admittedly, the foregoing rule or formula presents difficulty in application; but no other just resolution of the issue occurs to this Court.

Since evidence is not included in this record to enable this Court to make a just determination of the issue, it is necessary that the cause be remanded to the Trial Court for presentation and consideration of further evidence as to nature and extent of probable future activities of defendant affecting the amount of royalties and the percentage of future royalties attributable to such future activities of defendant.

The portion of the judgment of the Trial Court fixing the division of future royalties between the parties is vacated and the cause is remanded to the Trial Court for hearing further

evidence and entry of a further judgment as to the division of royalties. All other portions of the judgment of the Trial Court are affirmed. Costs of this appeal are taxed equally. That is, each party shall pay one-half of the costs of this appeal.

Affirmed in Part,
Vacated in Part and
Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE